834 N.E.2d 159 (2005)
N.W., Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 49A02-0502-JV-102.
Court of Appeals of Indiana.
September 14, 2005.
Transfer Denied December 8, 2005.
*160 Patricia Caress McMath, Indianapolis, for Appellant.
Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, for Appellee.

*161 OPINION
SHARPNACK, Judge.
N.W. appeals the juvenile court's adjudication finding him to be a delinquent for committing an act that would be possession of marijuana as a class A misdemeanor[1] if committed by an adult. N.W. raises one issue, which we restate as whether the juvenile court abused its discretion by admitting into evidence the marijuana found during a search of N.W. We affirm.
The relevant facts follow. On September 7, 2004, around 1:30 a.m., Marion County Sheriff Deputy Gary Hadden responded to a report of a burglary in process. A witness reported seeing two white males, one of whom was dressed in dark clothing and a baseball cap, going in and out of a garage window, but "they were scared off by a neighbor who put their porch light on." Transcript at 9. Because the two males had already left by the time Deputy Hadden arrived on the scene, he began to patrol the area looking for the suspects. As Deputy Hadden drove around, he saw two white males, one of whom was fifteen-year-old N.W., walking northbound on Lynhurst Avenue. Both males were wearing dark clothes, and one was wearing a baseball cap. Deputy Hadden turned his vehicle around to investigate whether they were involved in the burglary, and N.W. and the other male turned around and started walking southbound. As Deputy Hadden pulled up alongside of them, a female joined N.W. and the other male, and Deputy Hadden asked them to stop. Deputy Hadden, who testified that he was concerned about his safety, then asked them to place their hands on his car so he could pat them down for weapons. While Deputy Hadden was patting down N.W., N.W. told the deputy that he had a pellet gun in his waistband. As Deputy Hadden was removing the pellet gun from N.W.'s waistband, N.W. put his left hand in his left front pants pocket. Deputy Hadden, who was concerned that N.W. was reaching for a knife, grabbed N.W.'s hand to remove what was in his hand and discovered a bag of marijuana. Deputy Hadden arrested N.W., conducted a further patdown, and found a pack of cigarettes containing marijuana cigarettes.
The State filed a petition alleging N.W. to be a delinquent child for the offense of possession of marijuana as a class A misdemeanor if committed by an adult. During the denial hearing, the State moved to introduce the marijuana into evidence, and N.W. objected based on the ground that the stop and search were illegal under the Fourth Amendment of the United States Constitution. The juvenile court overruled the objection and admitted the marijuana into evidence. The juvenile court made a true finding of the allegation, adjudicated N.W. to be a delinquent, and placed N.W. on probation.
The issue is whether the juvenile court abused it discretion by admitting into evidence the marijuana found during a search of N.W. Because the admission and exclusion of evidence falls within the sound discretion of the trial court, we review the admission of evidence only for abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind.2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." Smith v. State, 754 N.E.2d 502, 504 (Ind.2001).
N.W. argues that the admission of the marijuana into evidence violated his constitutional rights against unreasonable search and seizure under the Fourth *162 Amendment to the United States Constitution because the deputy was not justified in conducting a patdown.[2] The Fourth Amendment protects persons from unreasonable search and seizure, and this protection has been extended to the states through the Fourteenth Amendment. Berry v. State, 704 N.E.2d 462, 464-465 (Ind.1998). As a general rule, the Fourth Amendment prohibits a warrantless search. Id. at 465. When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. Id. "One such exception to the warrant requirement is: when a police officer makes a Terry stop, if he has reasonable fear of danger, he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons that might be used to harm him." Williams v. State, 754 N.E.2d 584, 588 (Ind.Ct.App.2001), trans. denied. The United States Supreme Court, in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), explained that police officers may employ investigative techniques short of arrest on less than probable cause without violating Fourth Amendment interests. Wilson v. State, 745 N.E.2d 789, 792 (Ind.2001). The principal issue is whether the police action in question was reasonable under all the circumstances. Id. (citing Pennsylvania v. Mimms, 434 U.S. 106, 108-09, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977)).
On appeal, N.W. does not challenge the propriety of the initial stop but only the subsequent patdown search. Our Indiana Supreme Court has noted that Terry permits a:
reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.
Wilson, 745 N.E.2d at 792 (citing Terry, 392 U.S. at 27, 88 S.Ct. at 1883). An officer's authority to conduct a patdown search is dependent upon the nature and extent of his particularized concern for his safety. Id. "[A]n individual stopped may not be frisked or patted down for weapons, unless the officer holds a reasonable belief that the particular individual is armed and dangerous." Swanson v. State, 730 N.E.2d 205, 210 (Ind.Ct.App.2000) (quoting State v. Pease, 531 N.E.2d 1207, 1211 (Ind. Ct.App.1988)), trans. denied.
N.W. contends that the patdown search was unconstitutional because "Deputy Hadden did not point to a particularized suspicion to support a belief that N.W. might be armed and dangerous[.]" Appellant's *163 Brief at 3-4. The State argues that the circumstances justified the patdown search because Deputy Hadden conducted the search at night, was alone with N.W. and the other male, and suspected N.W. of committing a burglary.
During the denial hearing, Deputy Hadden testified that he had received a dispatch regarding a burglary and that he had received a "vague description" of the burglary suspects, including that they were white males, that "one [was] in dark clothing in a baseball cap" and that "they were scared off by a neighbor who put their porch light on." Transcript at 9. The deputy further testified that he "began circulating the area looking for possible suspects" when he noticed N.W. and another male walking northbound on Lynhurst. Id. at 8. Deputy Hadden then testified:
A ... As I pulled into a parking lot to turn around to see if, why they were out, if they were possibly, could they possibly be the suspects from the burglary uh they turned around and started walking back southbound again.
* * * * *
Q Okay. After you saw the two individuals what did you do?
A I pulled up along side of them. At that time they were joined by a female. Um as they were walking southbound I asked them to stop and they did. I asked them to uh place their hands on the car for my safety so I could pat them down so they, checked to see if they had any weapons, anything sharp....
Id. at 8-9. On cross-examination, Deputy Hadden testified as follows:
Q Um Officer um Hadden when you uh arrived on the scene you saw [N.W.] and another individual walking down the street, is that correct?
A Yes ma'am. I did.
Q Okay. And before you approached them um or as you approached them did you question them about what their names were or anything like that?
A Not at that time, no.
Q No? Not at that time. So you immediately um went to patting them down?
A Yes I was concerned for my safety.
Q Okay.
A So I, I made contact with them. I told them I was stopping them because we had a burglary in the area and I asked them to put their hands on the car which they did.
Id. at 12-13.
Deputy Hadden testified that he patted down N.W. because he was concerned for his safety. However, generalized concerns of officer safety will not support a lawful frisk. Swanson, 730 N.E.2d at 210 (citing L.A.F. v. State, 698 N.E.2d 355, 356 (Ind.Ct.App.1998)).
The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of self-protective search for weapons, [the police officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.
Id. (quoting Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)).
The State contends that the mere fact that Deputy Hadden suspected N.W. of having committed a burglary was "an independent basis to sustain the weapons *164 frisk." Appellee's Brief at 7. To support its contention, the State cites to cases from other jurisdictions, including State v. Cobbs, 103 N.M. 623, 711 P.2d 900 (1985), and State v. Ochoa, 135 N.M. 781, 93 P.3d 1286 (2004).[3]
In Cobbs, a police officer received a dispatch around 11:40 p.m. regarding a possible residential burglary in progress where the two suspects had been seen sitting in their vehicle behind the residence. Cobbs, 711 P.2d at 902. The officer, who was alone, arrived at the residence and saw a car parked behind the residence with its lights on and two men sitting in it. Id. The car started to leave, and the officer activated the lights on his patrol car and pulled over the car. Id. The officer ordered the men out of the car, ordered them to put their hands on the hood of the car, and called for backup. Id. When another officer arrived, each officer patted down a suspect. Id. The original officer "justified the patdowns of the suspects on the basis of the nature of the dispatch" and reasoned that the suspects might be armed or dangerous because he had been called to investigate a possible burglary in progress. Id. at 903. During the patdown, the officer ultimately discovered cocaine. Id. at 902. The defendant moved to suppress the cocaine on the basis that the cocaine was seized as the result of an unlawful search and unlawful arrest, and the trial court granted the defendant's motion. Id. at 903.
Upon appeal, the New Mexico Court of Appeals discussed, inter alia, the permissibility *165 of the patdown and stated that "the right to frisk is automatic whenever[] the suspect has been stopped upon the suspicion that he has committed, was committing, or was about to commit a type of crime for which the offender would likely be armed[.]" Id. at 907 (quoting 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 9.4 at 116).[4] The court noted that "[b]urglary. . . is a crime within the category recognized as the type of crime for which the offender would likely be armed" or is an "inherently dangerous" crime and concluded that "[a]n officer who stops a suspect on reasonable suspicion of such an offense may conduct a protective search." Id. The court further concluded that it was reasonable for the officer to fear that the suspected burglars might pose a danger to himself or nearby residents and held that "given the totality of the circumstances, there was an ample measure of reasonable suspicion necessary to justify [the officer's] decision to frisk the defendant. Otherwise, it would be manifestly absurd to require a police officer to await the glint of steel before he can act to protect his safety." Id. (quotations and citations omitted).
In Ochoa, the New Mexico Supreme Court cited to Cobbs as authority to support the proposition that the "right to frisk is automatic when [a] suspect has been stopped on the suspicion of committing or preparing to commit an inherently dangerous crime, like burglary." Ochoa, 93 P.3d at 1289.[5]
We agree with the foregoing cases and their discussion regarding the inherent danger associated with the crime of burglary and burglary suspects. Here, Deputy *166 Hadden's testimony reveals that he stopped N.W. because he wanted to see if he was possibly one of the two burglary suspects and patted him down because he was concerned for his safety. Given the inherent danger associated with burglary, it was reasonable that the deputy may have feared that these burglary suspects might pose a danger to him or others. We conclude that the facts and the situation before us  that it was early in the morning, that Deputy Hadden was alone when he came upon two individuals that matched the description of the suspects who had recently fled from the scene of the crime, and that N.W. was suspected of having committed burglary, which is an inherently dangerous crime  support a reasonable belief that N.W. was armed and dangerous or that the deputy's safety or that of others was in danger. Accordingly, Deputy Hadden's patdown of N.W. was reasonable, and the trial court did not abuse its discretion by admitting into evidence the marijuana found during the search of N.W. See, e.g., Abel v. State, 773 N.E.2d 276, 279 (Ind.2002) (holding that a reasonably prudent officer would be warranted in the belief that his safety or that of others was in danger where the officers encountered the defendant who matched the description of a radio dispatch of a possible robbery suspect who had been involved in a high-speed chase by car and then a chase on foot); Hailey v. State, 521 N.E.2d 1318, 1320 (Ind.1988) (holding that the officer was justified in conducting a search of the defendant for his own safety where the officer knew that the defendant was an identified suspect in a burglary investigation); Clenna v. State, 782 N.E.2d 1029, 1033-1034 (Ind.Ct.App.2003) (holding that a patdown search was proper where the officer provided testimony that "because the report was of a suspected robbery and because most robberies involve a weapon, he felt in danger for his safety and therefore, performed a patdown"); Johnson v. State, 710 N.E.2d 925, 928 (Ind.Ct.App.1999) (noting that "it was reasonable for [the officer] to conduct the protective patdown of [the defendant's] outer garments, because [the defendant] matched the description of a fleeing suspect reported to have fired shots just minutes before the defendant was spotted and detained by the officer"). But see, Rybolt v. State, 770 N.E.2d 935, 940-941 (Ind.Ct.App.2002) (holding that the patdown was unreasonable where officer testified that he conducted a patdown for officer safety because was he alone on the scene with the defendant; he suspected that the defendant was under the influence of a narcotic; and he believed that individuals who use narcotics carry weapons), reh'g denied, trans. denied; Swanson, 730 N.E.2d at 211-212 (holding that although "it is not uncommon for drug dealers to carry weapons," the facts that the officer conducted a patdown of the defendant because he was in a high drug area and had his hands in his pockets were "not sufficient to cause a reasonable officer to fear for his safety under these circumstances"); L.A.F., 698 N.E.2d at 356 (holding that a patdown conducted for "officer safety" does not provide specific and articulable facts showing justification for the frisk and noting that "[a]lthough the officers may have been aware of additional facts and circumstances which caused them to believe that [the juvenile] was armed and dangerous, the State failed to present them"); Banks v. State, 681 N.E.2d 235, 239 (Ind.Ct.App.1997) (concluding that "if [the officer] believed [the defendant] was armed and presently dangerous to [the officer] or others, [the officer] stated no reason for that belief" and holding that the patdown was not justified because the officer did not provide any testimony indicating that he believed the defendant was armed and dangerous to the officer or others).
*167 For the foregoing reasons, we affirm the juvenile court's adjudication finding N.W. to be a delinquent for committing an act that would be possession of marijuana as a class A misdemeanor if committed by an adult.
Affirmed.
VAIDIK, J. and MAY, J. concur.
NOTES
[1] Ind.Code § 35-48-4-11 (2004).
[2] N.W. also argues that the search violated his rights under Article I, Section 11 of the Indiana Constitution. The State argues that N.W. has waived any argument based on the Indiana Constitution because N.W. did not object on the basis of the Indiana Constitution at the denial hearing. We agree.

A party may not object on one ground at trial and raise a different ground on appeal. White v. State, 772 N.E.2d 408, 411 (Ind. 2002). Here, when the State moved to introduce the marijuana into evidence, N.W. objected based on the ground that the stop and search were illegal under the Fourth Amendment of the United States Constitution. Thus, N.W.'s failure to object on Indiana Constitutional grounds at trial results in waiver on appeal. See, e.g., id.; Williams v. State, 698 N.E.2d 848, 851-852 (Ind.Ct.App.1998) (holding that the defendant waived review of his argument on Indiana Constitutional grounds because his objection at trial did not assert any violation of the Indiana Constitution), reh'g denied, trans. denied.
[3] We note that Justice Harlan's concurring opinion in Terry addresses the effect of the nature of the offense for which a defendant is stopped. In his concurring opinion, Justice Harlan noted that he "unreservedly agree[d] with the Court's ultimate holding" but was "constrained to fill in a few gaps" in the majority's Terry opinion. Terry, 392 U.S. at 31, 88 S.Ct. at 1885 (Harlan, J., concurring).

Where such a stop is reasonable, however, the right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulable suspicion of a crime of violence. Just as a full search incident to a lawful arrest requires no additional justification, a limited frisk incident to a lawful stop must often be rapid and routine. There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet.
The facts of this case are illustrative of a proper stop and an incident frisk. Officer McFadden had no probable cause to arrest Terry for anything, but he had observed circumstances that would reasonably lead an experienced, prudent policeman to suspect that Terry was about to engage in burglary or robbery. His justifiable suspicion afforded a proper constitutional basis for accosting Terry, restraining his liberty of movement briefly, and addressing questions to him, and Officer McFadden did so. When he did, he had no reason whatever to suppose that Terry might be armed, apart from the fact that he suspected him of planning a violent crime. McFadden asked Terry his name, to which Terry `mumbled something.' Whereupon McFadden, without asking Terry to speak louder and without giving him any chance to explain his presence or his actions, forcibly frisked him.
I would affirm this conviction for what I believe to be the same reasons the Court relies on. I would, however, make explicit what I think is implicit in affirmance on the present facts. Officer McFadden's right to interrupt Terry's freedom of movement and invade his privacy arose only because circumstances warranted forcing an encounter with Terry in an effort to prevent or investigate a crime. Once that forced encounter was justified, however, the officer's right to take suitable measures for his own safely followed automatically.
Id. at 33-34, 88 S.Ct. at 1886. Justice Harlan repeated this view in his concurring opinion in Sibron: "[T]he right to frisk is automatic when an officer lawfully stops a person suspected of a crime whose nature creates a substantial likelihood that he is armed[.]" Sibron, 392 U.S. at 74, 88 S.Ct. at 1907 (Harlan, J., concurring).
[4] This section can currently be found at 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 9.6(a) at 625 (4th ed.2004).
[5] This concept of burglary being an inherently dangerous crime has also been discussed in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In Taylor, the United States Supreme Court was faced with determining the meaning of the word "burglary" as it was used in the statutory sentence enhancement provision of 18 U.S.C. § 924(e). Taylor, 495 U.S. at 577, 110 S.Ct. at 2147. This statutory provision provides for a sentence enhancement for a defendant who is convicted under 18 U.S.C. § 922(g)(1) of unlawful possession of a firearm and who has three prior convictions for "a violent felony or a serious drug offense, or both." Id. at 577-578, 110 S.Ct. at 2147-2148 (quoting 18 U.S.C. § 924(e)). The sentence enhancement provision defined "violent felony" as meaning "any crime punishable by imprisonment for a term exceeding one year. . . that . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. at 578, 110 S.Ct. at 2148 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

Before determining the meaning of "burglary" for the purposes of § 924(e), the Supreme Court reviewed the background of § 924(e). Id. at 581-590, 110 S.Ct. at 2149-2154. The Supreme Court reviewed the House and Senate Reports and discussed the general purpose of the Career Criminals Amendment Act of 1986. Id. at 582-587, 110 S.Ct. at 2149-2152. From this legislative history, the Supreme Court concluded that Congress had "singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense . . . because of its inherent potential for harm to persons." Id. at 588, 110 S.Ct. at 2152-2153.
The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate. And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape. Congress apparently thought that all burglaries serious enough to be punishable by imprisonment for more than a year constituted a category of crimes that shared this potential for violence and that were likely to be committed by career criminals.
Id., 110 S.Ct. at 2153.