OPINION
RILEY, Judge.

STATEMENT OF THE CASE

Appellant-defendant, Robert L. Dixon (Dixon), appeals the trial court’s denial of his motion to suppress certain evidence which was discovered in violation of his Fourth Amendment Rights.
We reverse and remand.

ISSUE

Dixon raises one issue on appeal, which we restate as: Whether Dixon’s patdown search following a traffic infraction violated his rights under the Fourth Amendment of the United States Constitution.

FACTS AND PROCEDURAL HISTORY

At approximately 1:00 a.m. on June 16, 2011, Officer Adam. Loudermilk of the Terre Haute Police Department (Officer Loudermilk) was on patrol in his marked vehicle when he observed a blue 1998 Chevrolet Cavalier operated by Dixon in the vicinity of First Avenue and 16th Street in Terre Haute, Indiana. Officer Loudermilk had been following the vehicle for three or four blocks when Dixon made a turn without signaling. The Officer decided to stop Dixon and activated his lights. Dixon pulled his vehicle into a parking spot in a residential neighborhood, stopped, and turned off his car. When Officer Loudermilk exited his vehicle, he noticed that Dixon had gotten out of his car and had started walking towards a residence: Officer Loudermilk approached Dixon and told him, “Hey, you need to get back in your car[,]” but Dixon continued to walk away. (Transcript p. 10). After Officer Loudermilk took out his taser and instructed Dixon for a third time to get back into his car, Dixon stopped and asked, “What did I do? What did I do?” (Tr. p. 10). Officer Loudermilk responded, “You just needed to use your turn signal. It’s not that big of a deal. Just have a seat in your car and we’ll go from there.” (Tr. p. 10). Officer Loudermilk walked Dixon back to Dixon’s vehicle.
Officer Loudermilk instructed Dixon to sit in the driver’s seat with the door open, while the Officer remained standing next to the open door. When Dixon handed the Officer his license and identification, Officer Loudermilk recognized Dixon’s name. A week or two previously, Officer Louder-milk was approached by an individual, whom he knew from when this person was an inmate at the county jail, who told him that Dixon was selling narcotics in Terre Haute. Although Officer Loudermilk did not find any irregularities in Dixon’s identification or license, he requested the presence of another officer.
After Officer Birchfield arrived, Officer Loudermilk decided to take Dixon out of Dixon’s car to pat him down. Officer Loudermilk asked Dixon to place his hands on top of the vehicle and began the pat- *61 down search. Officer Loudermilk felt a baggie “with a rock in there” in Dixon’s right front pants’ pocket. (Tr. p. 21). When Officer Loudermilk grabbed the baggie, Dixon took his hands off the car and Officer Loudermilk decided to handcuff him as he had not yet checked Dixon’s waistband or other pockets. Officer Loud-ermilk took Dixon’s left hand and brought it behind Dixon’s back; however, when the Officer took hold of Dixon’s left hand, Dixon elbowed him in the nose. Because Dixon attempted to flee, the officers took him to the ground and tased him twice. Officer Loudermilk eventually handcuffed Dixon and found three baggies on his person.
On June 30, 2011, the State filed an Information, charging Dixon with Count I, dealing in cocaine, a Class A felony, Ind. Code § 35-48-4-1; Count II, possession of cocaine, a Class B felony, I.C. § 35-48-4-6; Count III, battery resulting in bodily injury, a Class D felony, I.C. § 35-42-2-1; and Count IV, resisting law enforcement, a Class A misdemeanor, I.C. § 35-44-3-3. On June 4, 2012, Dixon filed a motion to suppress the cocaine found on his person following the patdown search, which was heard by the trial court on December 13, 2012. On May 28, 2013, the trial court, adopting the State’s proposed findings of fact and conclusions of law verbatim, denied Dixon’s motion to suppress. On July 1, 2013, the trial court certified its Order for interlocutory appeal, which we accepted on August 23, 2013.
Additional facts will be provided as necessary.

DISCUSSION AND DECISION

On interlocutory appeal, claiming a violation of the Fourth Amendment of the United States Constitution, Dixon contends that Officer Loudermilk’s patdown search was not based on a reasonable suspicion that criminal activity may be afoot or on a reasonable concern for the Officer’s safety.
We review a trial court’s denial of a motion to suppress in a manner similar to review of other sufficiency issues. Sanders v. State, 989 N.E.2d 332, 334 (Ind.2013), reh’g denied. There must be substantial evidence of probative value in the record to support the ruling of the trial court. Id. We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court’s ruling. Id.
The Fourth Amendment to the United States Constitution protects persons from unreasonable search and seizure, and this protection has been extended to the states through the Fourteenth Amendment. N.W. v. State, 834 N.E.2d 159, 161 (Ind.Ct.App.2005), trans. denied. As a general rule, the Fourth Amendment prohibits a warrantless search because “[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State.” Schmerber v. California, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. N.W., 834 N.E.2d at 162. “[I]t is well-settled Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has reasonable suspicion that criminal activity ‘may be afoot.’ ” Overstreet v. State, 724 N.E.2d 661, 663 (Ind.Ct.App.2000) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), trans. denied.
Moreover, after making a Terry stop, if an officer has a reasonable fear of *62 danger, he may perform a carefully limited patdown of the outer clothing of the individual in an attempt to discover weapons which might be used to assault the officer. Parker v. State, 697 N.E.2d 1265, 1267 (Ind.Ct.App.1998), tram, denied. The Terry patdown should be confined to its protective purpose. If the facts known by the officer at the time of the stop are such that a man of reasonable caution would believe that the action taken was appropriate, the Fourth Amendment is satisfied. Id. Thus, an officer’s authority to conduct a patdown search is dependent upon the nature and extent of the particularized concern for his safety. N.W., 834 N.E.2d at 162. “[A]n individual stopped may not be frisked or patted down for weapons, unless the officer holds a reasonable belief that the particular individual is armed and dangerous.” Id. (quoting Swanson v. State, 730 N.E.2d 205, 210 (Ind.Ct.App.2000)). These specific inferences must amount to something more than an officer’s “inchoate and unparticularized suspicion or hunch.” Terry, 392 U.S. at 27, 88 S.Ct. 1868. The “demand for specificity in the information upon which police action is predicated is the central teaching of [our Supreme Court’s] Fourth Amendment jurisprudence.” Id. at 21 n. 18, 88 S.Ct. 1868.
Because the standard under Terry is one of objective reasonableness, we are not limited to what the stopping officer testifies to or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been in fear of his safety. See Parker, 697 N.E.2d at 1267. The Court recognized in Terry that encounters between the police and citizens “are incredibly rich in diversity,” that “[n]o judicial opinion can comprehend the protean variety of the street encounter,” and that “we can only judge the facts of the case before us.” Terry, 392 U.S. at 12, 15, 88 S.Ct. 1868.
Because the validity of an investigatory stop and protective Terry patdown depends on the facts and circumstances of each particular case, it is important that the parties build the record to the fullest degree possible through extensive and detailed examination of the witnesses. Here, the trial court focused on Officer Louder-milk’s testimony as developed by the State through its direct examination and reiterated in its proposed findings of fact and conclusions of law. However, the analysis of the transcript reveals a more diverse set of circumstances.
Officer Loudermilk had received information from an informant that Dixon might be a drug dealer. The Officer testified that after he received this communication, he investigated where Dixon lived and drove by his residence “a couple times” but “[n]ever saw any activity.” (Tr. p. 38). On June 26, 2011, Officer Loudermilk started following Dixon’s vehicle. After trailing Dixon for three to four blocks, Dixon made a turn without signaling and Officer Loudermilk commenced a traffic stop. Absent failing to signal the turn, the Officer had not observed any erratic driving, furtive movements, or irregularities with Dixon’s vehicle. Dixon pulled his vehicle into a parking spot in a residential neighborhood, stopped, and turned off his car. Officer Loudermilk testified that “Dixon was getting out of his car when [the Officer] activated [his] lights” and started walking towards a house. (Tr. p. 40).
When Officer Loudermilk observed Dixon walking towards the house, he did not see a weapon in either hand and “nothing about [Dixon’s] appearance led him to believe he was engaged in criminal activity.” *63 (Tr. p. 43). After ordering Dixon to return, Officer Loudermilk walked Dixon back to his vehicle. Besides Dixon’s question about what he did wrong, Dixon did not argue with the Officer. The Officer conceded that “he did not observe anything threatening about [Dixon].” (Tr. p. 47). Without patting him down first, Officer Loudermilk told Dixon to get back into the driver’s seat of his car. The Officer stood next to the open driver’s door and requested Dixon’s identification. While checking for possible open warrants on Dixon, the Officer remained by the open door. No irregularities in Dixon’s identification or open warrants were found. However, after noticing Dixon’s name on his identification, the Officer “had this feeling that something was wrong.” (Tr. p. 53). The Officer decided to request the presence of another officer to conduct a patdown because he “believed that there was possibly something in that car. Whether it be gun, whether it be drugs, something.” (Tr. p. 65).
To support its denial of Dixon’s motion to suppress, the trial court emphasized the “extreme” nervousness displayed by Dixon while seated in the car. (See Appellant’s Br. p. 29). Specifically, the trial court points to Dixon’s failure to make eye contact with the Officer, his rocking back and forth in the seat, and digging in his pockets. However, this can reasonably be explained by the fact that Officer Louder-milk, although conceding that Dixon did not exhibit any threatening conduct, displayed his taser during the entire duration of the traffic stop, including when the Officer was standing next to the open driver’s door.
Viewed sequentially, the picture emerges that Dixon had already pulled into a parking spot prior to the Officer activating his lights and signaling the commencement of the traffic stop. Dixon did not exhibit any threatening conduct or belligerent tone of voice. Cooperating with the Officer, who walked Dixon back to his car and stood next to the open driver’s door, Dixon handed him his identification. Only after the Officer recognized Dixon’s name as a possible drug dealer, the Officer started voicing a belief that he needed “to put this guy in handcuffs until [he] find[s] out what’s going on.” (Tr. p. 22).
Under the Terry doctrine, a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has stopped. Nothing in Terry can be understood to allow a generalized cursory search for weapons or indeed, any search for anything but weapons. Ybarra v. Illinois, 444 U.S. 85, 93-94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). “The narrow scope of the Terry exception does not permit a frisk for weapons on less than a reasonable belief or suspicion directed at the person to be frisked.” Id. Here, Officer Loudermilk’s actions ostensibly belie the fact that he was concerned for his safety. We reverse the trial court’s decision and remand to the trial court for further proceedings in accordance with this opinion.[1]

CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion when it denied Dixon’s motion to suppress evidence located in violation of Dixon’s Fourth Amendment rights.
Reversed and remanded.
*64 ROBB, J., concurs.
BRADFORD, J., dissents with separate opinion.

. Because we reverse the trial court’s decision based on a Fourth Amendment violation, we do not need to address Dixon’s alternate argument pursuant to Article I, Section 11 of the Indiana Constitution.