## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 20 2016, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Suzy St. John
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jonathan Wallace, *Appellant-Defendant,* | May 20, 2016 |
| v. | Court of Appeals Case No. 49A02-1507-CR-819 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Linda E. Brown, Judge |
| | Trial Court Cause No. 49G10-1501-CM-632 |

**Kirsch, Judge.**

[1] Following a bench trial, Jonathan Wallace appeals his conviction for Class A misdemeanor carrying a handgun without a license[1] and raises the following restated issued: whether the trial court abused its discretion when it admitted into evidence, over Wallace's objection, the handgun that was discovered during a pat-down search of Wallace, which occurred during a traffic stop.

[2] We affirm.

## Facts and Procedural History

[3] On the evening of January 2, 2015, around 6:20 p.m., Indianapolis Metropolitan Police Department ("IMPD") Officer Kyle Flynn was on patrol in his fully marked police car. He was stopped at the stoplight at 38th Street and Keystone Avenue, which IMPD considers as one of its targeted "high crime" areas. *Tr.* at 8-9, 13. Officer Flynn checked the license plates of some of the cars that were also at the intersection, including a green Toyota Camry ("the Toyota") stopped in the lane to the right of Officer Flynn's car, and he learned that the license plate was expired. Officer Flynn watched the Toyota abruptly change lanes and turn left onto Keystone Avenue. It then promptly turned right onto East 37th Street, "at a pretty fast rate of speed." *Id.* at 12. Keeping the Toyota in his sight, Officer Flynn continued through the intersection and then caught up to the Toyota on 37th Street. Officer Flynn activated his vehicle's emergency siren and lights to conduct a traffic stop of the Toyota due to the

---

[1] *See* Ind. Code § 35-47-2-1.

expired license plates. The Toyota made a turn onto Caroline Avenue, proceeded past a few houses, pulled to the left (west) side of the street, and parked. *Id*. at 12-13.

[4] Officer Flynn got out of his car and approached the Toyota. The driver, later identified as Wallace, was alone in the car. Officer Flynn asked Wallace for his license and the vehicle's registration, as was customary for him to do. Wallace replied that "he didn't have a license; he didn't have his wallet[;] and that it was his girlfriend's car." *Id*. at 14. While in the car, Wallace was "fidgeting" and appeared nervous. *Id*. Wallace "was debating actively" with Officer Flynn about why he was stopped, and his tone was "aggressive" and "very confrontational," which Officer Flynn believed was "not normal" for a traffic stop. *Id*. at 17, 20. Officer Flynn determined that it would not be safe for him to leave Wallace in the Toyota while he returned to his patrol car to conduct a records search, so he asked Wallace to step out of his vehicle, and finding Wallace's conduct to be "very suspicious," he performed a pat-down of Wallace for officer safety. *Id*. at 15, 17.

[5] In Wallace's front pocket, Officer Flynn felt what he believed from experience to be a magazine for a Glock handgun. He then found a Glock firearm in Wallace's waistband. Officer Flynn removed the handgun and placed Wallace in handcuffs. Around the time that Officer Flynn discovered and removed the handgun and magazine from Wallace, back-up assistance arrived. At that time, one of the officers conducted a record check on Wallace's name. There were no outstanding warrants, but the officers learned that Wallace's driving status

was "suspended prior on learning permit" and that Wallace's handgun permit was "in limbo" as it had not yet been approved. *Id*. at 29. The Marion County Sheriff's Department transported Wallace to jail.[2]

[6] The State charged Wallace with one count of Class A misdemeanor carrying a handgun without a license. Wallace waived his right to a jury trial. During the bench trial, Wallace moved to suppress the handgun, arguing that it was the fruit of an unconstitutional search under the Fourth Amendment and his rights under Article 1, Section 11 of the Indiana Constitution. Wallace renewed the constitutional objections throughout Officer Flynn's testimony. The trial court admitted the handgun into evidence over Wallace's objections.

[7] Officer Flynn testified that the Toyota's sudden turns in a high crime area, along with the fact that the car had expired plates, caused him some concern, explaining that sudden movements of that nature sometime reflect evasive moves taken by a person to avoid being seen by police. He also noted that when he activated his lights and siren, the Toyota did not immediately stop, but rather turned and drove past several houses, before it stopped on the left side of the street and turned off all its lights. Officer Flynn testified that, during the traffic stop of the Toyota, after Wallace verbally identified himself, he recognized Wallace from having met him during a previous encounter that

---

[2] Officer Flynn testified that during the arrest and processing of evidence at the scene, a woman believed to be Wallace's girlfriend came out of one of the homes near where Wallace had parked the Toyota, and the officer told her that Wallace was being arrested and that the vehicle was being towed. *Tr*. at 31-32.

occurred some months prior, in which Wallace was the complainant, alleging theft of his cell phone. During that prior interaction, Officer Flynn had checked Wallace's identification information in a system called "InterAct," which had indicated Wallace "may be known to carry a firearm."[3] *Corrected. Tr.* at 19. Officer Flynn testified that during the traffic stop, when he was speaking to Wallace in the Toyota, Wallace was "fidgeting" and appeared nervous, although Wallace did not appear to be specifically trying to reach around in the car to grab or hide anything. *Tr.* at 14. When Officer Flynn asked for license and registration, Wallace stated that he "didn't have a license" and that he "didn't have his identification because he didn't have his wallet." *Id.* at 14, 20. Wallace also told Officer Flynn that the car belonged to his girlfriend. Officer Flynn testified that although Wallace was not loud and did not make any threats, his tone was "argumentative," "aggressive," and "very confrontational." *Id.* at 17, 20. Officer Flynn testified that, based on the situation, he made the assessment that "it was not safe to leave Wallace in the vehicle" while the officer returned to his patrol car, so Officer Flynn asked Wallace to step out of his car and did "a quick pat down for officer safety," discovering the magazine and handgun. *Id.* at 15. A records search revealed that Wallace did not possess a driver's license and also did not have a valid permit to carry the handgun.

---

[3] Wallace notes that InterAct was a public reports system used by IMPD for a period of time, but IMPD quit using it in December 2015. *Appellant's Br.* at 7, n.3.

[8]     IMPD Detective Tanya Terry also testified at trial, stating that, during the additional investigation on the case, she contacted the Indiana State Police ("ISP") Licensing Section and learned that when Wallace was found in possession of the handgun, he had previously applied for a permit, but it had not been issued yet.

[9]     Wallace testified that he applied for a permit to carry a firearm at "the end of October" 2014, and on November 14, 2014, he paid for it. *Id*. at 58. Wallace testified that upon his release from jail,[4] he checked his mailbox and found the permit was there, stating, "[I]t was sent two days after I was arrested." *Id*. at 59. Wallace introduced a copy of his "concealed carry permit" ("Permit"), which the trial court admitted over the State's objection. *Def.'s* Ex. B. The Permit reflected that it was issued on January 7, 2015, five days after his arrest. *Id*. Wallace testified that on January 2, 2015, the date he was arrested, he believed that he was allowed to carry a handgun. He explained, "ISP . . . had ninety days to approve [my] permit . . . so I believed it was approved within the ninety days of November 14th of me paying." *Tr*. at 61. He further stated that he had not received anything to advise him that it had not been approved, and "Like I said[,] it had been ninety days." *Id*. at 62.

---

[4] During sentencing, counsel advised the trial court that Wallace spent twelve days in jail. *Tr*. at 74.

At the conclusion of the evidence, and following argument by counsel, the trial court found Wallace guilty as charged and sentenced him to 365 days in jail, with 341 days suspended. Wallace now appeals.

## Discussion and Decision

Wallace asserts that Officer Flynn lacked reasonable suspicion that Wallace was armed and dangerous, and, therefore, the handgun was the fruit of an unlawful search and should not have been admitted into evidence.[5] During the bench trial, Wallace moved to suppress the handgun as the fruit of an unconstitutional search; the trial court denied the motion, and the matter proceeded to a bench trial. Therefore, the issue is properly framed as whether the trial court abused its discretion by admitting the evidence at trial. *Johnson v. State*, 38 N.E.3d 658, 660 (Ind. Ct. App. 2015), *trans. denied*; *Widduck v. State,* 861 N.E.2d 1267, 1269 (Ind. Ct. App. 2007).

> Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pretrial motion to suppress or by trial objection. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. However, we must also consider the uncontested evidence favorable to the defendant. In this sense, the standard of review differs from the typical sufficiency of the

---

[5] Wallace does not dispute that Officer Flynn had a lawful basis for initiating the traffic stop based on the expired plates on the Toyota. Under both the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution, "It is well settled that a police officer may stop a vehicle when he observes a minor traffic violation." *Kroft v. State,* 992 N.E.2d 818, 821 (Ind. Ct. App. 2013).

evidence case where only evidence favorable to the verdict is considered.

*Widduck,* 861 N.E.2d at 1269 (internal citations omitted). On appeal, determinations regarding admissibility of evidence are reviewed for an abuse of discretion and will be reversed only when admission is clearly against the logic and effect of the facts and circumstances, and the error affects a party's substantial rights. *N.W. v. State*, 834 N.E.2d 159, 161 (Ind. Ct. App. 2005), *trans. denied*; *see also Johnson*, 38 N.E.3d at 661 (even if evidentiary decision was abuse of discretion, we will not reverse if admission constituted harmless error). We may affirm a trial court's decision to admit evidence seized as a result of a search based on any legal theory supported by the record. *Johnson*, 38 N.E.3d at 661. We review *de novo* a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Id*. (citing *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008)). Wallace argues on appeal that the handgun should not have been admitted into evidence because Officer Flynn's search of him, resulting in the seizure of the handgun, violated his rights under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

### *Fourth Amendment*

[12] The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects[ ] against unreasonable searches and

seizures" by the government. U.S. Const. amend. IV. "[I]t is well-settled Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has reasonable suspicion that criminal activity 'may be afoot.'" *Overstreet v. State,* 724 N.E.2d 661, 663 (Ind. Ct. App. 2000) (quoting *Terry v. Ohio,* 392 U.S. 1, 27 (1968)), *trans. denied.* A *Terry* stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions. *Holbert v. State*, 996 N.E.2d 396, 400 (Ind. Ct. App. 2013), *trans. denied.*

[13] A routine traffic stop "is more analogous to a so-called *'Terry* stop' . . . than to a formal arrest." *Mitchell v. State*, 745 N.E.2d 775, 780 (Ind. 2001). If, after making a *Terry* stop, an officer has a reasonable fear of danger, he may perform a carefully limited pat-down of the outer clothing of the individual in an attempt to discover weapons that might be used to harm the officer. *N.W.*, 834 N.E.2d at 162; *see also Mitchell*, 745 N.E.2d at 780 (officer may perform *Terry* pat-down of driver or any passenger if he has reasonable suspicion that they may be armed and dangerous).

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or

"hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Mitchell*, 745 N.E.2d at 781 (quoting *Terry*, 392 U.S. at 27). "'[I]n justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id*. (quoting *Terry*, 392 U.S. at 21). Because the standard under *Terry* is one of objective reasonableness, we are not limited to what the stopping officer testifies to or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been in fear of his safety. *Dixon v. State*, 14 N.E.3d 59, 61-62 (Ind. Ct. App. 2014) (citing *Parker v. State,* 697 N.E.2d 1265, 1267 (Ind. Ct. App. 1998), *trans. denied*), *trans. denied*.[6] Thus, if the facts known by the officer at the time of the stop are such that a person of reasonable caution would believe that the action taken was appropriate, the Fourth Amendment is satisfied. *Terry,* 392 U.S. at 22.

[14]  Wallace claims that the trial court should not have admitted the handgun because "[t]he circumstances establish at most a generalized concern for officer safety which does not support a lawful frisk." *Appellant's Br*. at 8. The State

---

[6] We note that, originally, transfer was granted in *Dixon v. State*, but following oral argument, the Supreme Court vacated the order granting transfer, reinstated the Court of Appeals opinion, and denied transfer. *Dixon v. State*, 14 N.E.3d 59, 67 (Ind. Ct. App. 2014), *trans. granted*, 18 N.E.3d 1005 (Ind. 2014), *vacated*, 27 N.E.3d 736 (Ind. 2015) and *trans. denied*, 27 N.E.3d 736 (Ind. 2015).

maintains that, contrary to Wallace's argument, the pat-down was based on Officer Flynn's reasonable suspicion of criminal activity or reasonable safety concerns. After a review of the record, we agree with the State.

[15] Although Wallace asserts that Officer Flynn patted him down on nothing more than a "hunch" that he might be armed and dangerous, Wallace's argument disregards the fact that Wallace was driving a vehicle, not his own, with expired plates, in a "high crime" area, and that Wallace's vehicle made an abrupt lane change and successive immediate turns. Officer Flynn testified that, in his experience, sudden turns of that sort may indicate evasive maneuvers intended to avoid police. When Officer Flynn did catch up with Wallace and activate his emergency lights and siren, Wallace did not immediately stop, but turned onto Caroline Street and drove past several houses, before he parked the car on the left side of the street and turned off all the vehicle's lights. When Officer Flynn asked Wallace for his license and registration, Wallace told Officer Flynn that "he didn't have a license," that he did not have identification because he did not have his wallet with him, and that the car belonged to his girlfriend. *Tr.* at 14. Officer Flynn described Wallace as combative, argumentative, and aggressive. Officer Flynn acknowledged that an individual has a right to ask why he or she was stopped by police, but Wallace's tone and demeanor was "not normal during a traffic stop." *Id.* at 20. Although Wallace did not actively make furtive movements that indicated he was reaching for something, he did appear very nervous and was fidgeting. Officer Flynn found that Wallace's behavior was "very suspicious" to the extent that he did not feel comfortable

walking back to his patrol car and leaving Wallace inside his vehicle. *Id*. at 15. Moreover, during the course of the stop, after Wallace had verbally identified himself, Officer Flynn recalled that he had met Wallace in a prior encounter, and a search at that time on the InterAct database had indicated that Wallace was described as someone who "may be known to carry a firearm." *Corrected Tr*. at 19-20.

[16] While any one factor standing alone might not support a pat-down for officer safety, the overall circumstances do. Officer Flynn's testimony identified particularized facts in support of a heightened concern that his safety or that of others was in danger, and the information known to Officer Flynn at the time of the pat-down was such that a person of reasonable caution would believe that the action taken was appropriate. Accordingly, the trial court did not abuse its discretion when it rejected Wallace's claim that the handgun should be suppressed because its seizure violated his Fourth Amendment rights, and it admitted the handgun into evidence.

### Article 1, Section 11

[17] While Article 1, Section 11 of the Indiana Constitution is almost identical in wording to the Fourth Amendment, our constitutional analysis is different. *D.F. v. State*, 34 N.E.3d 686, 689 (Ind. Ct. App. 2015), *trans. denied*. We "focus on the actions of the police officer and employ a totality-of-the-circumstances test to evaluate the reasonableness of the officer's actions." *Id*. at 690 (quoting *Duran v. State,* 930 N.E.2d 10, 17 (Ind. 2010)). The State has the burden to demonstrate the police intrusion was reasonable. *Id*. "To determine whether

an officer's actions were reasonable under the circumstances, we must balance: '(1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion that the method of the search and seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State,* 824 N.E.2d 356, 361 (Ind. 2005)).

[18] On appeal, Wallace's argument focuses on the Fourth Amendment, and he does not make a separate argument pursuant to Article 1, Section 11 of the Indiana Constitution, noting, "'The analysis under the Indiana Constitution is much the same as that under the Fourth Amendment.'" *Appellant's Br.* at 10, n.6 (quoting *J.D. v. State*, 902 N.E.2d 293, 296 (Ind. Ct. App. 2009), *trans. denied*). While we agree that the analysis is similar, we find that a separate analysis is warranted, as our Supreme Court has observed, "The Indiana Constitution may protect searches that the federal Constitution does not." *State v. Washington*, 898 N.E.2d 1200, 1206 (Ind. 2008). Having failed to pose a separate argument, we find that Wallace has waived his claim that the handgun should have been suppressed under the Indiana Constitution. *Jackson v. State*, 996 N.E.2d 387, 383 n.3 (Ind. Ct. App. 2013) (failure to make independent analysis under Article 1, Section 11 constitutes waiver on appeal, citing Ind. Appellate Rule 46(A)(8)), *trans. denied*. Waiver notwithstanding, we find the pat-down did not violate Wallace's rights under Article 1, Section 11.

[19] Here, Officer Flynn observed the Toyota, which had expired plates, abruptly change lanes at the intersection at which both Officer Flynn and the Toyota

were stopped, then make a left turn, and immediately thereafter, make successive turns, noting that the Toyota was driving at a "pretty fast rate of speed." *Tr*. at 12. Officer Flynn testified that, in his experience, this type of driving may indicate an attempt to avoid law enforcement. When Officer Flynn thereafter caught up with the Toyota, he activated his emergency lights and siren to conduct a traffic stop; the Toyota made another turn onto Caroline Street, passed several houses, and came to a stop and parked on the left side of the street, turning off its lights. Wallace debated with Officer Flynn about why he was stopped. Wallace told Officer Flynn that he did not have a license, he did not have identification because it was in his wallet, which he did not have with him, and the car was not his, but belonged to his girlfriend. Although Wallace did not threaten Officer Flynn, Wallace's tone was argumentative, aggressive, and confrontational. Officer Flynn acknowledged that Wallace did not appear to be actively reaching for something, but said that Wallace was nervous and fidgeting. Officer Flynn felt that Wallace's demeanor was "not normal" for a traffic stop and seemed "very suspicious." *Id*. at 15, 20. We find that these facts establish a reasonable basis for Officer Flynn's concern, the degree of intrusion of the "quick pat down" search was not significant, and the officer's questions and conduct were appropriate to address law enforcement needs during the traffic stop. *Id*. at 15. Under the totality of the circumstances, Officer Flynn's pat-down of Wallace did not contravene Article 1, Section 11 of the Indiana Constitution. Accordingly, the trial court did not err in admitting the handgun into evidence.

Affirmed.

Mathias, J., and Brown, J., concur.