

**FILED**
May 13 2015, 10:17 am

CLERK
of the supreme court,
court of appeals and
tax court

<table>
<tr><td>

ATTORNEY FOR APPELLANT

Elizabeth A. Houdek
Indianapolis, Indiana

</td><td>

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

</td></tr>
</table>

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.F., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | May 13, 2015 <br><br> Court of Appeals Case No. <br> 49A02-1408-JV-575 <br><br> Appeal from the Marion Superior Court; The Honorable Marilyn A. Moores, Judge; The Honorable Geoffrey Gaither, Magistrate; <br><br> 49D09-1405-JD-1115 |

**May, Judge.**

[1]     D.F. appeals his adjudication as a delinquent. He asserts the court erred by admitting the handgun found inside his sweatshirt because the search of his sweatshirt violated the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

[2]     We affirm.

## Facts and Procedural History

[3]     Around 8:00 p.m. on May 6, 2014, a citizen approached a police officer and reported "a black male with a black hoodie that had a large black gun with a long magazine in the park on the bleachers." (App. at 12.) The officer reported the information and it was released over dispatch. Officer Adam Mingerink responded to the dispatch.

[4]     As Officer Mingerink approached in his vehicle, he saw D.F. on the bleachers taking off a black hoodie. D.F. sat down on the bleachers next to the hoodie. As Officer Mingerink walked toward the bleachers, D.F. began "[s]cooting away from the sweatshirt." (Tr. at 7.) Officer Mingerink opened the hoodie and found a gun.

[5]     The State filed a delinquency petition alleging D.F. committed an act that would, if committed by an adult, be Class A misdemeanor dangerous possession of a firearm[1] and Class A misdemeanor carrying a handgun without

---

[1] Ind. Code § 35-47-10-5.

a license.[2]  D.F. objected to the admission of the handgun and Officer Mengerink's testimony about it.  The court overruled the objections and adjudicated D.F. a delinquent.[3]

## Discussion and Decision

[6]  We review rulings regarding the admission of evidence for an abuse of discretion, which occurs "when a decision is clearly against the logic and effect of the facts and circumstances before the court."  *Johnson v. State*, 992 N.E.2d 955, 957 (Ind. Ct. App. 2013), *trans. denied*.  We do not reweigh the evidence or assess the credibility of witnesses.  *Id*.  Instead, we "consider conflicting evidence in a light most favorable to the trial court's ruling."  *Id*.

[7]  Where admissibility of evidence is challenged based on the constitutionality of the search that uncovered the evidence, we also consider any uncontested evidence favorable to the appellant.  *Id*. "Although a trial court's determination of historical facts is entitled to deferential review, we employ a *de novo* standard when reviewing the trial court's ultimate determination of reasonable suspicion and probable cause."  *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009) (italics in original), *trans. denied*.

> In other words, when a trial court has admitted evidence alleged to have been discovered as the result of an illegal search or seizure, we

---

[2] Ind. Code § 35-47-2-1.

[3] D.F. filed a motion to correct error asserting the two true findings subjected him to double jeopardy, and the court vacated one of them.

generally will assume the trial court accepted the evidence presented by the State and will not reweigh that evidence, but we owe no deference as to whether that evidence established the constitutionality of a search or seizure.

*Johnson*, 992 N.E.2d at 957.

## 1.    Fourth Amendment

[8]    The Fourth Amendment prohibits unreasonable government searches and seizures, and its protection extends to brief investigatory stops that fall short of traditional arrest. *C.H. v. State*, 15 N.E.3d 1086, 1092 (Ind. Ct. App. 2014), *trans. denied*.  An officer may briefly detain someone to investigate, without a warrant or probable cause, if specific and articulable facts and the rational inferences therefrom give the officer "reasonable suspicion that criminal activity 'may be afoot.'" *Moultry v. State*, 808 N.E.2d 168, 171 (Ind. Ct. App. 2004).  To determine whether there was reasonable suspicion, we must determine whether the totality of the circumstances show "the detaining officer had a particularized and objective basis for suspecting legal wrongdoing." *Johnson*, 992 N.E.2d at 958.  During such an investigatory stop, a police officer may conduct a

> reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.  The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883 (1968).

[9] Officer Mingerink responded to a report of a black male in a black sweatshirt who was on the bleachers in a park and had a gun that "looked like an Uzi like you saw in the movies. It had the magazine that stuck low out of the gun." (Tr. at 6.) He arrived at the park within thirty seconds of receiving the dispatch. He saw D.F. near the bleachers taking off a black sweatshirt. After removing the sweatshirt, D.F. sat down on the bleachers next to the sweatshirt. There were a number of other people in the park at the time, but Officer Mingerink did not see anyone else who was wearing a black sweatshirt. Several other juveniles were on the bleachers, which were next to a court where a basketball game was being played.

[10] In light of Officer Mengerink's swift arrival on the scene where D.F. was at the reported location in the reported attire, we cannot say the officer lacked reasonable suspicion to investigate whether D.F. had a gun. Officer Mengerink therefore did not violate D.F.'s Fourth Amendment rights when he unfolded D.F.'s sweatshirt and found a gun. *See*, *e.g.*, *W.H. v. State*, 928 N.E.2d 288, 295 (Ind. Ct. App. 2010) (totality of circumstances supported stop of juvenile believed to be carrying a handgun in a crowded public location), *trans. denied*.

### 2.    Article 1, Section 11

[11] While Article 1, Section 11 of the Indiana Constitution contains the same language as the Fourth Amendment, our constitutional analysis is different. *Id.* at 298. We "focus on the actions of the police officer and employ a totality-of-the-circumstances test to evaluate the reasonableness of the officer's actions."

*C.H. v. State*, 15 N.E.3d 1086, 1093 (Ind. Ct. App. 2014) (quoting *Duran v. State*, 930 N.E.2d 10, 17 (Ind. 2010)), *trans. denied*.  The State has the burden to demonstrate the police intrusion was reasonable.  *C.H.*, 15 N.E.3d at 1093.  To determine whether an officer's actions were reasonable under the circumstances, we must balance "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search and seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).  When considering the degree of intrusion, "we consider the nature of the privacy interest upon which the search intrudes and the character of the intrusion itself." *C.H.*, 15 N.E.3d at 1093 (quoting *Chest v. State*, 922 N.E.2d 621, 624 (Ind. Ct. App. 2009)).

[12]   The degree of suspicion was high as a citizen had reported the handgun in a face-to-face conversation with a police officer just moments before Officer Mengerink arrived at the scene and found D.F., who matched the citizen's description.  Second, the intrusion into D.F.'s privacy was minimal, as Officer Mengerink needed only to unfold the sweatshirt.  Finally, the extent of law enforcement needs was high because police had reason to believe a teenager had a handgun in a public park where others were present.  Officer Mengerink's actions were reasonable under the circumstances and did not violate D.F.'s right under Article 1, Section 11 of the Indiana Constitution.  *See, e.g.*, *W.H.*, 928 N.E.2d at 297 (search did not violate state constitutional rights when police

were concerned juvenile had handgun, when stop was brief and unintrusive, and when law enforcement needed to maintain safety of crowd).

## Conclusion

[13] Finding no error in the admission of the handgun under either the Fourth Amendment or Article 1, Section 11, we affirm D.F.'s adjudication as a delinquent.

[14] Affirmed.

Robb, J., and Mathias, J., concur.