FILED
08/22/2017, 11:07 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# I N   T H E
# COURT OF APPEALS OF INDIANA

Taccasia Porter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 22, 2017

Court of Appeals Case No.
49A02-1703-CR-572

Appeal from the Marion Superior
Court

The Honorable Steven Rubick,
Magistrate

Trial Court Cause No.
46G07-1610-CM-40805

**Baker, Judge.**

[1] Taccasia Porter was a passenger in a vehicle that was pulled over for a routine traffic stop. During the stop, the officer noticed an odor of marijuana emanating from Porter's person. An initial search revealed no contraband, so the officer decided to conduct a more thorough search. Therefore, on the side of a public road, with no evidence of any measures taken to protect Porter's privacy or any law enforcement need to conduct the search right then and there, the officer pulled Porter's jeans away from her body and inserted her hand inside Porter's jeans. After feeling an object inside Porter's underwear, the officer then stuck her hand inside Porter's underwear, next to her genital area, and retrieved a marijuana blunt. While the initial pat-down search was permissible, we find that the subsequent search ran afoul of both the federal and state constitutions.

[2] Porter appeals her conviction for Class B Misdemeanor Possession of Marijuana.[1] Porter argues that the trial court erroneously admitted evidence stemming from an unduly invasive roadside search of her person by a police officer. We agree, and reverse.

## Facts

[3] On October 15, 2016, Indianapolis Metropolitan Police Officer Tiffany Wren made a traffic stop in the 2300 block of Lafayette Road for an unspecified headlights violation. Porter was a passenger in the vehicle that was pulled over.

---

[1] Ind. Code § 35-48-4-11(a)(1).

When Officer Wren approached the vehicle, she smelled the odor of burnt marijuana. She called for backup and another officer responded. The officers asked Porter and the driver to get out of the vehicle.

[4] When Porter exited the vehicle, Officer Wren smelled marijuana. Initially, Officer Wren could not tell whether the odor was coming from Porter herself or from "being in the car." Tr. p. 10. Officer Wren searched Porter by checking her pockets, around the waistband of her jeans, and down her legs, but the officer did not find anything. Officer Wren then searched the vehicle, and did not find anything.

[5] Officer Wren returned to where Porter and the driver were standing and again smelled "a very, very strong odor of raw marijuana coming from [Porter's] person." *Id.* at 11. Officer Wren then searched Porter a second time, re-checking all the areas she had already searched and also checking "the front of [Porter's] pants." *Id.* at 13. According to the officer, Porter's "jeans were really tight so that I recall I had to really, like pull her jeans out in order to get my hand in there." *Id.* at 16. Officer Wren put her hand inside the front of Porter's jeans but outside of her underwear. Officer Wren stated, "when I put my hand in, I felt on the back of my hand something . . . I believed to be a marijuana blunt." *Id.* at 13. Officer Wren then put her hand inside of Porter's underwear, on the front side, and retrieved a blunt. Porter was then placed under arrest for possession of marijuana.

[6] On October 16, 2016, the State charged Porter with Class B misdemeanor possession of marijuana. Porter's bench trial took place on February 16, 2017. At the bench trial, Porter moved to suppress the evidence of the marijuana, arguing that the search was unconstitutional under the federal and state constitutions. The trial court denied the motion to suppress and admitted the evidence, ultimately finding Porter guilty as charged. The trial court sentenced Porter to 180 days in the Marion County Jail, with 178 days suspended. Porter now appeals.

# Discussion and Decision

[7] Porter argues that the trial court erroneously admitted the evidence of the marijuana blunt stemming from Officer Wren's roadside search of her person. We will only reverse a trial court's ruling on admission of evidence if the decision is clearly against the logic and effect of the facts and circumstances before the court. *D.F. v. State*, 34 N.E.3d 686, 688 (Ind. Ct. App. 2015), *trans. denied*. In conducting our review, we will neither reweigh the evidence nor assess witness credibility, but we apply a de novo standard of review to matters of law. *Id.* In other words, when a defendant contends that the trial court admitted evidence alleged to have been discovered as the result of an illegal search or seizure, an appellate court will generally assume the trial court accepted the evidence as presented by the State and will not reweigh that evidence, but we owe no deference as to whether that evidence established the constitutionality of the search or seizure. *Id.* at 689.

# I. Trial Court's Findings

[8]     The trial court made a brief oral statement explaining its ruling on Porter's motion to suppress, and she argues that two of its factual findings were clearly erroneous. *See L.A.F. v. State*, 698 N.E.2d 355, 356 (Ind. Ct. App. 1998) (noting that we will accept a trial court's factual findings unless they are clearly erroneous; findings are clearly erroneous when the record lacks any facts or reasonable inferences to support them). The trial court found as follows:

> Motion to suppress is denied. The officer conducted an initial brief patdown then proceeded to the car. Upon returning from the car, she noticed a strong odor emanating directly from Ms. Porter. The initial patdown search—if the initial patdown search had gone to this extent, I would have sustained it, the defendant's motion to suppress. But this was a subsequent search based on the probable cause of the strong odor clearly emanating from Ms. Porter after the officer returned.
>
> I understand the defendant's position with respect to the location, but *the evidence before the Court incorporating the evidence from Officer Wren from the previous trial that this is at 10:00 o'clock at night, and the officer has testified that she kept her hands not in the, as I believe she said, the "private-private" area, but around the waistband*.
>
> The Court finds that the level of intrusion, though greater than normal, was less of an intrusion on Ms. Porter than having her taken into custody, transported to the processing center, and subjected to a full search. The motion to suppress is denied.

Tr. p. 22 (emphasis added). Porter argues that the trial court's findings regarding the time of day the search occurred and the placement of Officer Wren's hands during the search are clearly erroneous.

## A. Time of Search

[9] With respect to the time of the search, the record is silent. Officer Wren testified that she "worked 12:00 to 10:00," but did not specify whether it was noon to 10:00 p.m. or midnight to 10:00 a.m., and did not testify at all as to the time she pulled over the vehicle and searched Porter. *Id.* at 6. The trial court relied on information from a "previous trial," *id.* at 22, to find that the search took place at 10:00 p.m., but there was no previous trial involving Porter. This may have been a reference to the trial of the driver of Porter's vehicle, but Porter did not participate in that trial or have any opportunity to challenge testimony in that setting.

[10] The State argues that Officer Wren testified that she did not issue a ticket "for the headlights," *id.* at 23, which must mean that the incident occurred at night, in the dark. We disagree, as Officer Wren did not specify what headlights infraction may have occurred. There are many traffic infractions involving headlights that can be committed at any time of day or night. *E.g.*, Ind. Code § 9-21-7-2 (requiring use of headlights in certain weather conditions); I.C. § 9-21-7-3 (vehicle must display at least two headlights and may only have four auxiliary or spot headlights lit at one time); I.C. § 9-21-7-4 (vehicle may only have high beams lit if they strike less than seventy-five feet from the vehicle);

I.C. § 9-21-7-10 (prohibiting unauthorized display of colored lights on front of vehicle); I.C. § 9-21-13-4.5 (requiring use of headlights and taillights during participation in a funeral procession); I.C. § 9-21-8-55 (defining "aggressive driving," in part, as "[r]epeatedly flashing the vehicle's headlights"). Therefore, the mere fact that Officer Wren considered citing the vehicle for a headlights infraction does not permit a reasonable inference that the incident occurred at night. As there is no basis in the record supporting this finding, it is clearly erroneous.

## B. Placement of Officer's Hands

[11] Next, we turn to the trial court's finding that Officer Wren did not put her hands in the "'private-private' area" and instead kept them around Porter's waistband. *Id.* at 22. Officer Wren testified that she searched "down through [Porter's] pants," pulling Porter's jeans away from her body to insert the officer's hand inside her pants, feeling the outside of Porter's underwear, and, finally, sticking her hand inside of Porter's underwear to retrieve the blunt; Officer Wren even explicitly testified that she placed her hands "in the crotch area" and "between [Porter's] legs" to retrieve the marijuana. *Id.* at 13-16, 23. Therefore, the finding that Officer Wren kept her hands around Porter's waistband and did not insert them beneath her clothing was clearly erroneous.[2]

---

[2] The State concedes that this finding was clearly erroneous but contends that this error is not enough to reverse the judgment. We agree, and will continue with the constitutional analysis.

## II. United States Constitution

[12] Porter argues that the search was unconstitutional pursuant to the Fourth Amendment to the United States Constitution. A search conducted without a warrant is per se unreasonable unless it falls within a few well-delineated exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967). Relevant to this case is the exception for searches incident to arrest. Porter concedes that this exception applies to this case because, "[a]lthough Officer Wren did not formally place Porter under arrest until after she found the marijuana, Officer Wren had the authority to search Porter once she smelled [the] odor of raw marijuana coming from her person." Appellant's Br. p. 12; *see also Bell v. State*, 13 N.E.3d 543, 546 (Ind. Ct. App. 2014) (holding that the smell of raw marijuana on a person is sufficient to provide probable cause that the person possesses marijuana); *Moffitt v. State*, 817 N.E.2d 239, 247 (Ind. Ct. App. 2004) (noting that so long as probable cause exists to make an arrest, "the fact that a suspect was not formally placed under arrest at the time of the search incident thereto will not invalidate the search").

[13] The purposes of a search incident to arrest are to ensure officer safety and to prevent destruction of evidence. *United States v. Robinson*, 414 U.S. 218, 227-28 (1973). Even if a search incident to arrest is permissible, it must still be conducted in a reasonable manner. The United States Supreme Court has explained that evaluating the reasonableness of a search incident to arrest requires "a balancing of the need for a particular search against the invasion of personal rights the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In

conducting this analysis, there are four factors to consider: (1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted. *Id.*

[14] Turning to the instant case, we note that the State has the burden of proving the reasonableness of a warrantless search. *Middleton v. State*, 714 N.E.2d 1099, 1101 (Ind. 1999). To establish reasonableness, the State is limited to the evidence it presented at trial and any reasonable inferences that may be drawn from that evidence. *E.g.*, *L.A.F.*, 698 N.E.2d at 356.

### 1. Scope of Intrusion

[15] As to the first *Bell* factor, the scope of the intrusion, Officer Wren testified that the second search included the use of force to pull Porter's jeans away from her body: "her jeans were really tight so that I recall I had to really, like pull her jeans out in order to get my hand in there." Tr. p. 16. Officer Wren first put her hand inside the front of Porter's jeans but outside of her underwear, using the back of her hand to touch Porter's underwear; then, she put her hand inside of Porter's underwear and retrieved the blunt. *Id.* at 13-14.

[16] It is well established in our culture that "people have a reasonable expectation not to be unclothed involuntarily, to be observed unclothed or to have their 'private' parts observed or touched by others." *Justice v. Peachtree City*, 961 F.2d 188, 191 (11th Cir. 1992); *see also State v. Battle*, 688 S.E.2d 805, 814 (N.C. Ct. App. 2010) (finding a similar search that included pulling a woman's underwear away from her body on the side of a public roadway to be

"humiliating"). Our General Assembly has also recognized a person's privacy interest in the genital area of his or her body. *See, e.g.*, Ind. Code § 35-45-4-5(a)(3) (defining "private area," for purpose of voyeurism statute, as "the naked or undergarment clad genitals, pubic area, or buttocks of an individual"); Ind. Code § 35-42-4-8 (criminalizing the act of touching a person's "genitals, pubic area, buttocks, or female breast" with intent to arouse when the person is unaware the touching is occurring). It would be hard to contest an assertion that one's pubic area is a private area of the body that merits special protections.

[17] We find two cases instructive on this *Bell* factor. First is *Powell v. State*, in which this Court considered an argument that a search incident to arrest was unreasonable under the Fourth Amendment. 898 N.E.2d 328 (Ind. Ct. App. 2008). In *Powell*, while searching the defendant incident to his arrest for several crimes, a police officer felt a hard object in the seat of his underwear. Powell was wearing very droopy pants that hung below his buttocks, exposing his underwear. The officer decided to cut the object out of Powell's underwear, which he was able to readily access because of the low position in which Powell was wearing his pants. The object was later determined to be cocaine enclosed in a fabric pocket. This Court did not find the search to be overly intrusive:

> Though the scope of the intrusion seems unreasonable at first blush, given that Powell was wearing his pants low, thereby exposing his underwear by his own doing, and the cocaine was kept in a pocket-type enclosure with material on both sides, Officer Thompson was able to remove the cocaine from Powell's underwear without exposing any of Powell's skin.

*Id.* at 335.

[18] In this case, as in *Powell*, Officer Wren was able to remove the blunt from Porter's underwear without exposing any of her skin. Unlike *Powell*, however, the manner in which Porter wore her clothing did not expose her undergarments or provide easy access to areas underneath her clothing.

[19] The second case we find instructive is *Battle*, 688 S.E.2d 805, which is somewhat factually similar to the case before us. In *Battle*, the police pulled over a vehicle in which Battle was a passenger. The officers had probable cause to search Battle incident to arrest based on the statements of a confidential informant. A female officer instructed Battle to stand between the open doors of a police SUV parked on the side of the road so she could conduct the search out of the view of the public. The officer instructed Battle to pull the bottom of her bra away from her body and shake it; she was not required to remove her shirt. The officer then conducted a patdown, but did not find anything. Finally, the officer unzipped Battle's pants, pulled them open, lowered them to her hip, and pulled back her underwear, where she found a crack pipe and a plastic baggie containing heroin. The officer saw the top of Battle's pubic hair and buttocks; her underwear and pants were not pulled down. The *Battle* Court considered the *Bell* factors, finding that

> the scope of the intrusion relative to Defendant's person was great, as any reasonable person would have found it to be a humiliating experience far beyond that incident to an arrest and search of Defendant's outer garments alone. . . . Whether anyone other than [the police officer] actually saw Defendant's private

parts during the search is irrelevant to the Fourth Amendment analysis in this regard.

*Id.* at 814. The *Battle* Court noted that the United States Supreme Court has held that the Fourth Amendment consequences of a search would not be analyzed "in a way that would guarantee litigation about who was looking and how much was seen." *Safford Unified Sch. Dist. No. 1. v. Redding*, 557 U.S. 364, 374 (2009).

[20] In the instant case, Officer Wren did not lower Porter's pants at all or visually observe any of Porter's private areas, unlike in *Battle*. But the officer did strenuously pull Porter's pants away from her body, insert her hand between the pants and underwear, and then insert her hand between the underwear and Porter's body. So, while the scope of intrusion was arguably not as great as in *Battle*, it was still significant.

### 2. Manner in which Search was Conducted

[21] The State presented limited evidence about the manner in which the search was conducted. The record reveals that Officer Wren is a woman. She testified that she had been trained on performing a search, but she did not testify as to the content of that training or whether she followed it. Tr. p. 14. And there is no evidence as to whether she conducted herself professionally, whether she wore gloves or followed proper procedures, or whether she attempted to protect Porter from public embarrassment. There were two men—the unnamed male officer and the male driver of the vehicle—at the scene when Porter's

underwear was searched, and there was no evidence that Officer Wren moved Porter away from the men or otherwise attempted to block their view of Porter while she was searched. The State has the burden of proving the reasonableness of the search, and it did not establish that the search was conducted in a reasonable manner.

### 3. Justification for Initiating Search

[22] Porter concedes that Officer Wren had probable cause to conduct a search incident to arrest based on the odor of raw marijuana. But Officer Wren offered no justification for going steps further than a pat down, up to and including placing her hand inside Porter's underwear, aside from her suspicion that Porter possessed marijuana.

[23] In *Powell*, the officer testified that he needed to remove the unknown hard object from the defendant's underwear prior to transporting him to the police station for reasons of officer safety. 898 N.E.2d at 335 (noting that Powell was suspected of felony possession of a gun and had already attempted to flee from officers earlier in the stop). This Court found the justification to be adequate in those circumstances. *Id.* In *Battle*, in contrast, the Court found that the justification was inadequate:

> The trial court made no findings of fact or conclusions of law regarding any exigent circumstances that existed warranting the roadside strip search of Defendant. . . . Detective Curl had already conducted the normal search incident to arrest, manual inspection over the top of Defendant's clothing, as well as reaching inside Defendant's pockets, without discovering

anything suspicious. At the time Detective Curl initiated the strip search, there were no reasonable grounds to believe Defendant was concealing any weapon. There was no testimony indicating a belief that if Defendant was actually concealing drugs, that she was in a position to destroy or further hide that evidence. . . . This fails to meet constitutional muster.

688 S.E.2d at 818.

[24] Here, as in *Battle*, there is nothing in the record regarding any exigent circumstances. There is no evidence that Porter had made any furtive movements, that she resisted in any way, or that she presented any threat to the officers. Officer Wren voiced zero concerns about officer safety, nor did she testify that she was concerned that if Porter was concealing drugs, she would have been able to destroy, discard, or further hide that evidence before a full search could be conducted in a more private area. Officer Wren pulled the vehicle over for a minor traffic violation and extended the stop based on the odor of marijuana, which she encounters "almost daily." Tr. p. 7-8. In other words, this was a routine encounter with no justification for an invasive roadside search. *See Battle*, 688 S.E.2d at 824 (noting that approving an underwear search for a "run-of-the-mill" stop would allow the police to conduct invasive searches anytime they "have probable cause to suspect drug activity"); *Paulino v. State*, 924 A.2d 308, 314 (Md. 2007) (cautioning that "[w]ithout the constitutional safeguards of exigent circumstances and reasonableness, every search incident to arrest could result in a strip search").

### *4. Place in which Search was Conducted*

[25] Finally, as for the place in which the search was conducted, the State again offered limited evidence. The record reveals that the traffic stop and search of Porter's person took place on the side of the road in the 2300 block of Lafayette Road in Indianapolis. There is no evidence regarding time of day, amount of traffic, presence of pedestrians, type of neighborhood (residential or commercial), or proximity of buildings to the scene. The record does not reveal whether it was dark or light outside, but even if it was dark, there is no evidence about the lighting conditions, such as proximity and/or brightness of street lights, business lights, or patrol car headlights or spotlights. There is no evidence that Officer Wren took any precautions to block Porter from the view of any passersby on the street or sidewalk or the two men at the scene. Simply put, the evidence presented at trial was that the search took place in a public place, with no evidence that Porter was shielded from public view.

[26] The State argues that "the record shows that [the] search occurred when it was dark outside, at 10:00 p.m. on the side of the road in the 2300 block of Lafayette Road." Appellee's Br. p. 13. As noted above, however, the record establishes neither that it was dark nor that it was 10:00 p.m. The State also points out that "[n]o one testified that there were vehicles driving by or pedestrians walking by during the search. Thus, exposure to the public was minimal." *Id.* at 13-14. This argument, however, upends the burden of proof. As aptly put by Porter, "[b]ecause the State had the burden of establishing the reasonableness of the search at trial, the *absence* of evidence about traffic cannot

be used as *affirmative evidence* on appeal that there was in fact no traffic." Reply Br. p. 7 (emphases original). We agree.

[27] The only evidence in the record about the location of the search was that it was "out on the side of the road" in the 2300 block of Lafayette Road in Indianapolis. Tr. p. 14. This is indisputably a public place. Thus, on appeal, the only evidence supporting the reasonableness of the search is that it occurred in a public place.

[28] Having examined all of the *Bell* factors, we are compelled to conclude that this search was unreasonable under the Fourth Amendment. While there was probable cause to search Porter incident to arrest and to conduct the initial search of Porter's person, when Officer Wren went several steps further by inserting her hand into Porter's pants and then under her underwear, in a public place, with no voiced concerns about officer safety or destruction of evidence, the search became unreasonable. Therefore, the evidence of the marijuana found pursuant to the second, more invasive search should have been excluded.

## III. Indiana Constitution

[29] Although Article I, Section 11 of the Indiana Constitution shares the same language as the Fourth Amendment, we interpret and apply the provision independently. *State v. Bulington*, 802 N.E.2d 435, 438 (Ind. 2004). We construe this provision of the state constitution liberally "in favor of protecting individuals from unreasonable intrusions on privacy," *Rush v. State*, 881 N.E.2d 46, 52 (Ind. Ct. App. 2008), applying a totality of the circumstances test "to

evaluate the reasonableness of the officer's actions," *Duran v. State*, 930 N.E.2d 10, 17 (Ind. 2010). The State bears the burden of showing that the intrusion was reasonable. *Bulington*, 802 N.E.2d at 438. In determining reasonableness, we consider "(1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[30] In *Powell*, having found that the search passed muster under the Fourth Amendment, this Court then turned to Article I, Section 11 of the Indiana Constitution. 898 N.E.2d at 336. The degree of suspicion was high because Powell was being arrested for numerous crimes, including felony possession of a gun and resisting law enforcement. *Id.* The degree of intrusion was lessened by the fact that Powell wore his pants in a way that exposed his underwear to the public. *Id.* Additionally, the officer was able to remove the package of cocaine without exposing any of Powell's skin, Powell was shielded from public view by parked police cars and a building, and the officer testified that no pedestrians walked by during the search. *Id.* The law enforcement need was significant because the officer believed it was necessary to remove the unknown hard object for officer safety before transporting Powell to another location. *Id.* Under these circumstances, this Court found that the search of Powell did not violate the Indiana Constitution. *Id.*

[31] In the instant case, Officer Wren undeniably had a valid reason to suspect that Porter was committing the Class B misdemeanor of possession of marijuana

based on the odor of raw marijuana emanating from her person. There was no evidence, however, that Officer Wren ever suspected Porter of a more serious crime. *See Edwards v. State*, 759 N.E.2d 626, 627 (Ind. 2001) (holding that "routine, warrantless strip searches of misdemeanor arrestees, even when incident to lawful arrests, are impermissible under the Indiana Constitution").

[32] With regard to the degree of intrusion, we must consider "the nature of the privacy interest upon which the search intrudes and the character of the intrusion itself." *Chest v. State*, 922 N.E.2d 621, 624 (Ind. Ct. App. 2009). As noted above, the privacy interest in this case—the sanctity of one's most private areas—is of the highest degree. As to the character of the intrusion itself, Officer Wren pulled Porter's jeans forcibly away from her body and inserted her hand inside the pants. She then inserted her hand inside of Porter's underwear. All of this took place in a public area on the side of a road, with no evidence that any precautions were taken to protect Porter's privacy from pedestrian or vehicular passersby or the two men on the scene. There is also no evidence that Officer Wren took sanitary precautions, such as using plastic gloves to conduct the search. Thus, the degree of intrusion was significant.

[33] Finally, as to the extent of law enforcement needs, the State presented no evidence of an immediate need to search Porter on the side of the road, rather than taking her to a more private area such as a police vehicle, police station, or jail. *Cf. Powell*, 898 N.E.2d at 331 (noting that officer specifically testified that it "was necessary to remove the unknown object for officer safety *before transporting Powell*") (emphasis added). Officer Wren voiced no concerns about

officer safety, and there is no evidence that Porter did anything during the stop to create officer safety concerns. Likewise, there is no evidence that the officer was concerned that Porter would somehow be able to destroy, hide, or dispose of the evidence before a search of her person in a more private area could be conducted.[3] Thus, the law enforcement need in this case was limited to the normal law enforcement task of enforcing Indiana's misdemeanor laws.

[34] Having considered the three factors, we can only conclude that the search in this case was unreasonable under the Indiana Constitution. While the officer had probable cause to believe Porter had committed a misdemeanor and had the authority to perform a search of her person incident to arrest, her decision to perform an intrusive search on the side of a public road, without a clear law enforcement need to do so, was unreasonable under the totality of the circumstances. Consequently, the admission of this evidence was also erroneous under the Indiana Constitution.

[35] The judgment of the trial court is reversed.

Bailey, J., concurs.
Altice, J., concurs with a separate opinion.

---

[3] The State mentions in passing "a potential health risk" to Porter had the officer left the marijuana in place inside Porter's underwear pending transportation to a more private area for a fuller search. Appellee's Br. p. 21. But the State does not elaborate on what the health risk may have been, nor is there any evidence whatsoever in the record supporting such an assertion.

# IN THE
# COURT OF APPEALS OF INDIANA

Taccasia Porter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

Court of Appeals Case No.
49A02-1703-CR-572

**Altice, Judge, concurring.**

[36]     The slender record presented by the State below compels the result reached in this case. Officer Wren smelled a very strong odor of raw marijuana coming from Porter's person but had been unable to locate the contraband during a pat down search. Officer Wren then pulled on the waistband of Porter's jeans and reached her hand inside the front, crotch area, between Porter's legs. Upon feeling what she believed to be a marijuana blunt, Officer Wren then placed her hand inside Porter's underwear and retrieved the contraband.

[37] Although far from a strip search, I agree that this roadside exploratory search inside Porter's pants was particularly intrusive and necessitated a showing that the search was performed in a reasonable manner or under exigent circumstances. The State made no such showing. The bare record establishes merely that the search occurred "out on the side of the road" in the 2300 block of Lafayette Road and was performed by a female officer with at least two males present at the scene. *Transcript* at 14. These facts are not sufficient to establish that the search was reasonable.