## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 28 2018, 9:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ellen M. O'Connor
Victoria L. Bailey
Marion County Public Defender Agency - Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Corey Day,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 28, 2018

Court of Appeals Case No. 18A-CR-103

Appeal from the Marion Superior Court

The Honorable Alicia A. Gooden, Judge

Trial Court Cause No. 49G21-1607-F2-028483

**Mathias, Judge.**

[1] Corey Day ("Day") was convicted in the Marion Superior Court of Level 2 felony dealing in a narcotic drug between five and ten grams and found to be an

habitual offender. Day was ordered to serve an aggregate sentence of twenty years with eighteen years executed in the Department of Correction ("DOC") and two years in Marion County Community Corrections. Day appeals and raises two issues for our review, which we consolidate and restate as, whether the trial court abused its discretion when it admitted evidence obtained during a search incident to Day's arrest.

We affirm.

## Facts and Procedural History

[2] Around 2:00 p.m. on July 22, 2016, Indianapolis Metropolitan Police Department ("IMPD") Officer James Perry ("Officer Perry") observed Day failing to activate his turn signal 200-feet before changing lanes and initiated a traffic stop. The stop occurred on the east side of Indianapolis on Washington Street, which has two lanes of traffic traveling in both directions. The officer pulled Day over in the far-right lane of the two west-bound lanes.

[3] Officer Perry approached the driver side door, and, as he began talking to Day, he smelled raw and burnt marijuana. Day voluntarily admitted that he had recently smoked marijuana. Officer Perry returned to his marked police car and requested assistance from another officer. An unnamed officer arrived, and Officer Perry "gave the run-down of what [] was going on and informed them that I needed to get [Day] out of the vehicle." Tr. p. 97. Officer Perry asked Day to exit the car, and Day complied.

[4]     Before Officer Perry searched the car, he informed Day that he was going to conduct a pat-down to ensure that Day did not have any weapons on his person. Officer Perry testified that the driver's door was open and shielded Day from any individuals walking by who could potentially witness the search. Just after the officer began the pat-down, he had to stop because Day "began reaching with his right hand towards his waistband . . . two or three times[.]" *Id*. at 99. Officer Perry told Day to stop reaching for his waist, and when Day did not comply, Officer Perry placed Day in handcuffs to ensure officer safety. *Id*. He then "immediately went to pat down [Day's] waistline in that area since that's what he was reaching for." *Id*. at 100.

[5]     Officer Perry did not "feel anything readily [] bumping out." *Id*. But because of "the way that [Day] was reaching and how intent he was[,]" he pulled Day's shorts approximately two inches away from his body. *Id*. Officer Perry looked into Day's shorts and saw a brown bag of heroin "tucked between [Day's] upper thigh and his testicles." *Id*. The officer returned to his marked police car to put on gloves, but as he was putting the gloves on, "Day shifted. And as he shifted the heroin actually fell out of his shorts and onto the ground." *Id*. at 101. Officer Perry retrieved the heroin from the ground and "placed [it] into a plastic evidence envelope or bag." *Id*. Once the heroin was in an evidence bag, Officer Perry conducted a search of Day's car. Officer Perry found flakes of marijuana in the car's glove compartment. He also found $1,600 cash in Day's front pockets and multiple cell phones in the car.

[6] Thereafter, Officer Perry contacted the East District Narcotics Detective unit, and IMPD Officer Craig McElfresh ("Officer McElfresh") arrived at the scene. Officer McElfresh Mirandized Day, and he asked Day what kind of narcotics were retrieved at the scene. Day admitted he possessed approximately six grams of heroin. The officer asked Day if the heroin was his, and Day claimed that it was not his, that he was delivering the heroin to another location, and that he would be receiving a cut for the delivery.[1] *Id.* at 177.

[7] On July 25, 2016, the State charged Day with Level 2 felony dealing in a narcotic drug between five and ten grams and Level 4 felony possession of a narcotic between five and ten grams. Day was also alleged to be an habitual offender. On November 15, 2017, Day filed a motion to suppress. At a suppression hearing, Day argued that the evidence obtained from Officer Perry's search should have been suppressed because the search violated his Fourth Amendment rights. The trial court took the matter under advisement and on November 22, 2017, denied Day's motion to suppress.

[8] A jury trial was held on November 28, 2017, and the jury found Day guilty of Level 2 felony dealing in a narcotic drug between five and ten grams and Level 4 felony possession of a narcotic drug between five and ten grams. At sentencing, the court merged the Level 4 felony with the Level 2 felony and found Day to be an habitual offender. Day was ordered to serve an aggregate

---

[1] Officer McElfresh testified that "a cut" is street terminology for receiving payment for the delivery of drugs. Tr. p. 177.

sentence of eighteen years executed in the DOC and two years in Marion County Community Corrections. Day now appeals.

## Standard of Review

Our review of a denied motion to suppress following a completed trial at which the challenged evidence was admitted is properly a review of the trial court's decision to admit the evidence. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). We review the trial court's ruling on admissibility for abuse of discretion, reversing only if the ruling is clearly against the logic and effect of the facts, and the error affects substantial rights. *Id*. The constitutionality of a search or seizure is a pure question of law we review *de novo*. *Id*.

## I. Waiver

We initially note that the State alleges that "Day waived his argument that the trial court should have excluded the heroin evidence by not timely objecting at trial." Appellee's Br. at 8. It is well established that "[a] contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal[.]" *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). However, Indiana Rule of Evidence 103(b) states that "[o]nce the court rules definitively on the record at trial a party need not renew an objection or offer of proof to preserve a claim on appeal."

Here, before the start of the jury trial, the trial court reviewed preliminary instructions with counsel. The jurors were removed from the courtroom, and the following conversation transpired:

| [Trial Court]: | One thing I forgot to mention, just for purposes of the record, based on the motion to suppress, I'm going to treat the denial as a defendant overruling under Evidence Rule 103b. So now as part of the trial, you don't … have to continuously object to [preserve it] for appeal. |
|---|---|
| [Day's Counsel]: | Sure. |
| [Trial Court]: | So, I mean, obviously if you want to make some other motion or whatever at some point. But in terms of just the continuous objections, I think that relieves you from doing that. |
| [Day's Counsel]: | Thank you. |

Tr. p. 79.

[12]     The trial court instructed Day's counsel that Day's objection to the admission of the evidence found during the search raised in his motion to suppress was preserved for the purposes of appeal. The trial court's ruling was proper under Rule 103(b), and Day did not waive the issue by failing to object during Officer Perry's trial testimony. *See Vehorn v. State*, 717 N.E.2d 869, 872–73 (Ind. 1999) (holding that an exception to the rule requiring contemporaneous objections exists when the trial judge explicitly provides assurance during a pre-trial

hearing that counsel need not object at trial, and the objection is preserved for purposes of appeal).[2]

## II. Fourth Amendment

[13] Day argues that Officer Perry's roadside search violated his Fourth Amendment rights, and therefore the trial court erroneously admitted the evidence of heroin stemming from the search.[3] The Fourth Amendment to the United States constitution, made applicable to the states through the Fourteenth Amendment, provides in pertinent part that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" *W.H. v. State*, 928 N.E.2d 288, 294 (Ind. Ct. App. 2010) (citing *Mapp v. Ohio*, 367 U.S. 643, 656 (1961)), *trans. denied*. And it is well-settled that a search conducted without a warrant is per se unreasonable unless it falls within a few well-delineated exceptions to the warrant requirement. *Porter v. State*, 82 N.E.3d 898, 903 (Ind. Ct. App. 2017) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). One of those exception is a search incident to arrest.

[14] The search incident to arrest exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."

---

[2] We acknowledge that *Vehorn* was decided prior to the 2014 amendment of Indiana Rule of Evidence 103(b). However, the rationale is still applicable, and Rule 103(b) was satisfied here.

[3] While we do not express an opinion on the matter, we note that Day does not raise the issue of the search under Indiana Constitution Article 1, Section 11. Therefore, it is waived for review on appeal.

*Arizona v. Gant*, 556 U.S. 332, 338 (2009). "[S]o long as probable cause exists to make an arrest, 'the fact that a suspect was not formally placed under arrest at the time of the search incident thereto will not invalidate the search.'" *Porter*, 82 N.E.3d at 903 (quoting *Moffitt v. State*, 817 N.E.2d 239, 247 (Ind. Ct. App. 2004)). Officer Perry's roadside search of Day falls into the search incident to arrest exception because he smelled marijuana emanating from Day's car. *See Bell v. State*, 13 N.E.3d 543, 546 (Ind. Ct. App. 2014) (holding that the smell of burnt marijuana is sufficient to provide probable cause to arrest and conduct a search incident to arrest), *trans. denied*.

[15] However, "[e]ven if a search incident to arrest is permissible, it must still be conducted in a reasonable manner." *Porter*, 82 N.E.3d at 903. The United States Supreme Court has provided four factors that courts must consider when evaluating the reasonableness of a search incident to arrest: (1) the scope of the intrusion, (2) the manner in which the search is conducted, (3) the justification for initiating the search, and (4) the place where the search is conducted. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) ("*Wolfish"*).

[16] This court analyzed the four *Wolfish* factors in *Porter v. State* and determined that under the circumstances present in that case, the search was unreasonable. In *Porter*, a police officer initiated a traffic stop on a vehicle in which Porter was the passenger. After approaching the vehicle, the officer smelled a strong odor of marijuana on Porter and determined that she had probable cause to conduct a search incident to arrest. During the pat-down, the officer did not feel anything of concern. After searching the vehicle and finding nothing, the officer

returned to Porter and continued to smell a strong odor of marijuana emanating from her person. The officer then conducted a pat-down of Porter a second time, but this time she inserted her hand into the front of Porter's jeans and felt an object inside of Porter's underwear. The officer then placed her hand into Porter's underwear and retrieved a marijuana blunt. Porter appealed the roadside search arguing that "the trial court erroneously admitted the evidence of the marijuana blunt stemming from [the officer's] roadside search of the person." *Porter*, 82 N.E.3d at 901.

[17] A panel of this court considered the reasonableness of the search of Porter in light of the factors established in *Wolfish*. The *Porter* court first concluded that the scope of intrusion was unreasonable because the officer "strenuously pull[ed] Porter's pants away from her body" and inserted her hand between Porter's underwear and her body. 82 N.E.3d at 905. The court next determined that the State did not meet its burden to prove the reasonableness of the search because it "presented limited evidence about the manner in which the search was conducted[,]" and "there [was] no evidence as to whether [the officer] conducted herself professionally, whether she wore gloves or followed proper procedures, or whether she attempted to protect Porter from public embarrassment." *Id*. We acknowledged the justification for the initial search, however, we concluded that there was "no justification for going steps further than a [pat-down], up to and including [the officer] placing her hand inside Porter's underwear, aside from her suspicion that Porter possessed marijuana." *Id*. And relating to the place where the search was conducted, we concluded

that the evidence at trial established "that the search took place in a public place, with no evidence that Porter was shielded from public view." *Id*. at 906.

[18] After analyzing the four *Wolfish* factors, the *Porter* court stated:

> While there was probable cause to search Porter incident to arrest and to conduct the initial search of Porter's person, when [the officer] went several steps further by inserting her hand into Porter's pants and then under her underwear, in a public place, with no voiced concerns about officer safety or destruction of evidence, the search became unreasonable.

*Id*. at 907. Thus, we held that the officer's roadside search of Porter violated her Fourth Amendment rights. *Id*. Because Day relies on this court's decision in *Porter v. State* in support of his argument that Officer Perry's roadside search was unreasonable, we will analyze each of the *Wolfish* factors in order.

*1. Scope of Intrusion*

[19] As to the first factor in *Wolfish*, the scope of intrusion, Day asserts that the "genital revealing [pat-down]" was "invasive" and "egregious and humiliating." Appellant's Br. at 18. However, Officer Perry testified that he did not touch Day's testicles or penis, and the heroin fell to the ground because Day moved before it could be retrieved from his person. *See* Tr. pp. 18, 38. Mere observation, while invasive, is not equivalent to the manual manipulation of genitalia that occurred in *Porter*. Here, Officer Perry simply pulled Day's shorts approximately two inches away from his body, and he did not put his hands in Day's shorts. Tr. p. 35.

[20] Officer Perry did not physically manipulate Day's genitalia and did not subject Day to public humiliation. He simply pulled Day's pants away from his body. Therefore, the scope of intrusion was significantly less invasive than the search in *Porter*.

*2. The Manner of Conducting the Search*

[21] Day argues that the manner in which the search was conducted was intrusive and invasive. However, the State presented sufficient evidence that the manner in which the search was conducted was reasonable. Officer Perry testified that when conducting a pat-down it is routine practice that he would "start on the left side, [he'll] go to the right side. And that's when [he'll] go to [] waistbands and go further [from] there if [needed]." Tr. p. 133. Officer Perry began to conduct a pat-down, but he never completed the pat-down because Day reached toward the center of his waist "two or three times." *Id*. at 99. As a result, Officer Perry placed Day in handcuffs and conducted a subsequent search to check for weapons. Officer Perry followed proper procedures, and he attempted to protect Day from public embarrassment by keeping "him near the driver's door using [Day's car] as kind of a barrier[.]"*Id*. at 98; *Cf. Porter*, 82 N.E.3d at 906 (finding the manner of the search unreasonable when evidence did not show whether officer did anything to protect Porter from the view of two men nearby or the public). Therefore, the manner in which Officer Perry conducted the search was reasonable under the circumstances in the present case.

### 3. Justification for Initiating the Search

[22] Day argues that Officer Perry's roadside search was unjustified because no weapons were found on Day's person. But Officer Perry pulled Day over for a traffic violation and detected the smell of burnt marijuana. Day admitted that he had recently smoked marijuana, and Officer Perry had probable cause to conduct a search incident to arrest. *See Bell*, 13 N.E.3d at 546.

[23] Moreover, unlike the officer in *Porter*, who never voiced concern for officer safety, Officer Perry testified that he was concerned for his safety because "as [he] was starting to do the pat-down, [Day] began reaching to . . . the center area of his waist[,]" and he "put [Day] in handcuffs[,] for obvious safety reasons. [Officer Perry] didn't know what he was reaching for. There was the potential for somebody reaching for a weapon." Tr. p. 9. At this point in time, Officer Perry was concerned "for officer safety reasons. . . . [Day] had been very cooperative up to that point, and then suddenly was wanting to make some other movements besides what we wanted him to. So out of fear for [the officers'] own safety, we felt [Day] needed to be restrained." [4] *Id*. at 99. Officer Perry's decision to look inside Day's shorts for a weapon was a reasonable and justified split-second decision given the circumstances. *See Chimel v. California*,

---

[4] Officer Perry recounted that in his experience, he's "come across people that have tried to hide knives[.]" Tr. p. 16. He has also learned "about people hiding handcuff keys, which is also [] a safety issue because if somebody is able to get their cuffs off, then that defeats [the purpose of the cuffs]." *Id*. Further, Officer Perry testified that he searched for weapons because he knew "there have been cases where people who are handcuffed have actually pulled handguns out and shot at police officers, pulled weapons out[, and] destroyed evidence." *Id*. at 137.

395 U.S. 752, 763 (1969) (A search incident to an arrest is justified in order "to remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape . . . [or] to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.").

*4.  The Place the Search Was Conducted*

Finally, as for the place in which it was conducted, the State presented sufficient evidence to show the search took place at approximately 2:00 p.m., on East Washington Street in the near-east area of Downtown Indianapolis. The search occurred during the daylight hours and on a busy street, but Officer Perry used the driver's door of Day's car as a shield from oncoming traffic and public eye by keeping Day behind the driver's door for the duration of the search. *Cf. Porter*, 82 N.E.3d at 906 (where there was no evidence the officer took any precautions to protect Porter from public view and humiliation). While *Porter* instructs us that the place where the search was conducted is relevant, we decline to hold that a search is unreasonable simply because it occurred during the daylight and on a busy street. Doing so would allow individuals higher protection to conduct illegal activities when these circumstances are present.

[24]   Having examined all of the *Wolfish* factors, we conclude that this search was reasonable under the Fourth Amendment because Officer Perry had probable cause to search Day incident to arrest based on the detection and admission of burnt marijuana. Further, Officer Perry looked into Day's shorts to check for a

weapon, which was reasonable because Day kept reaching for his waist. Additionally, the search was justified because there was genuine concern for officer safety. And although it occurred in a public place, Day's exposure to the public was minimal.

## Conclusion

[25] Based on the facts and circumstances before us, we conclude that the search incident to arrest did not violate Day's Fourth Amendment rights, and the trial court did not abuse its discretion in admitting the evidence seized during the search.

[26] Affirmed.

Bailey, J., and Bradford, J., concur.